ILLINOIS CENTRAL RAILROAD COMPANY v. ALICE W. SUMRALL.

[51 South. 545.]

1. RAILROADS. *Injury at crossing. Duty of party crossing tracks. Looking and listening.*

A person crossing a railroad track may assume that the company will not run a train at a speed exceeding the rate allowed by law, but this will not relieve him of the duty of looking and listening for an approaching train.

2. SAME. *Same. Contributory negligence.*

Where a man walked between two parallel railroad tracks, within a few feet of each other, for four hundred and forty yards and then attempted to cross one of them without ascertaining that a train was approaching and was killed by it, there being nothing to prevent its having been seen and heard by him, he was guilty of such contributory negligence as will bar a recovery for his death, although the railroad company was negligent in running the train at a speed exceeding the statutory limit.

3. SUPREME COURT PRACTICE. *Theory of case in trial court. Affirmance on another.*

Where an action was brought and tried upon a distinct theory, plaintiff cannot claim an affirmance of a judgment, erroneous on the theory on which the case was tried, by advancing in the supreme court a new theory of the evidence, not presented in the trial court.

FROM the circuit court of Copiah county.

HON. WILEY H. POTTER, Judge.

Mrs. Sumrall, appellee, was plaintiff in the court below; the railroad company, appellant, was defendant there. From a judgment in plaintiff's favor defendant appealed to the supreme court. The facts are stated in the opinion of the court.

*Mayes & Longstreet,* and *R. N. & H. B. Miller,* for appellant.

[The reporter has been unable to find the brief of counsel for appellant in this case, hence no synopsis of it is given.]

*J. S. Sexton* and *N. W. Sumrall,* for appellee.

It is not disputed that Sumrall was killed "by the running of the locomotive of the defendant company," and the *prima facie* case under the statute having been made out, it devolved upon the defendant company to exonerate itself, and as stated by this court in the case of *New Orleans, etc., R. Co. v. Brooks,* 85 Miss. 269, "to overcome this statutory presumption it devolved upon the appellant to exculpate itself by establishing to the satisfaction of the jury such circumstances of excuse as would relieve it from liability."

"It is the rule that questions of contributory negligence and proximate cause must be left to the jury *unless they are perfectly obvious to the court.*" *Hopson v. Kansas City, etc., R. Co.,* 87 Miss. 796.

In *Stevens v. Yazoo, etc., R. Co.,* 81 Miss. (a case in many respects like the case at bar) it is said "if the train which did the damage to this man had been going at the lawful rate of speed of six miles an hour it is plain that the catastrophe would not have occurred because by the time the train could have gotten to him he would have been at an entirely safe place."

In the case of *Bell v. Southern Ry. Co.,* 87 Miss. 234, 30 South. 821, Chief Justice WHITFIELD, speaking for the court,

said: "So many questions are integrated usually into the solution of the question of negligence—it is so necessary to examine all the circumstances making up the situation in each case—that it must be a rare case of negligence that the court will take from a jury." "A judge at his desk, whose duties seclude him very much, and train him to habits of careful deliberation, it not nearly so competent to determine what a man of the usual and ordinary prudence might do under given circumstances as a jury from the body of the people. *Contributory negligence as a defense, must be quite obvious to all reasonable minds to warrant its announcement as matter of law." Stevens v. Yazoo, etc., R. Co.,* 81 Miss. 206.

In the case of *Louisville, etc., R. Co. v. Crominarity,* 86 Miss. 464, this court said "What constitutes negligence must depend always upon the surrounding conditions and the attendant circumstances of the particular instance. No hard and fast rule of action can be prescribed which will make the same course of conduct under any and all circumstances either wise or unwise, cautious or reckless. * * * The true rule is that it is incumbent upon the traveler to use that degree of care and caution which is rendered necessary by a reasonable regard for his safety under the peculiar circumstances and conditions by which he is at the time confronted." Such questions "must generally though not invariably be a question of fact, and being a question of fact it should be submitted to the jury under proper instructions for their decision."

In the case of *Yazoo, etc., R. Co. v. Rivers,* 93 Miss. 565, this court in speaking of the province of the jury says of that body "the twelve men who sit in the jury box are presumed to be men of common sense, honest, and desirous only of trying the case according to the law and the evidence."

Having noticed that Sumrall was killed by the running of the defendant's locomotive and that the only possible escape from liability on account therefor was that of his contributory

negligence and that this question is peculiarly one for the jury, I shall now proceed to call the attention of the court to the immediate facts surrounding the killing and see whether or not the defendant corporation exculpated itself and whether Sumrall was really guilty of contributory negligence.

It has occurred to me that, in discussing matters of this kind, those of us who are in the habit of excusing our clients from violation of law by referring to its violation by others in the shape of contributory negligence, overlook some very plain elementary things which cut a very large figure in human affairs. There is not only a legal presumption that the railroad was negligent in producing Sumrall's death in the manner in which it was produced, but there is a counter presumption in his favor founded on nothing less than the love of life itself that he did everything which the law required of him, because it is well known that in the absence of evidence to the contrary there is a presumption that he did everything necessary for his protection in the premises.

In the case of *Baltimore, etc., R. Co. v. Landrigan,* 191 U. S., the supreme court of the United States, speaking through Justice McKenna, said:

"There was no error in instructing the jury that, in the absence of evidence to the contrary, there was a presumption that the deceased stopped, looked and listened. The law was so declared in *Texas & P. R. Co. v. Gentry,* 163 U. S. 353, 366. The case was a natural extension of prior cases. The presumption is founded on a law of nature. We know of no more universal instinct than that of self-preservation,—none that so insistently urges to care against injury. It has its motive to exercise in the fear of pain, maiming and death. There are few presumptions based on human feelings or experience that have surer foundation than that expressed in the instruction objected to. But, notwithstanding the incentives to the contrary, men are sometimes inattentive, careless, or reckless of danger.

These the law does not excuse nor does it distinguish between the degrees of negligence."

We are justified, under this presumption of law, in supposing that when Sumrall approached the depot at the railroad crossing he looked and listened for approaching trains, and seeing none approaching from the south and knowing that it was only four hundred and forty yards to where he would walk the track to cross the Finch crossing, and knowing that under the law it was the duty of the defendant to sound its whistle or ring its bell at least three hundred yards from said crossing and not to run more than six miles an hour within the corporation, and knowing that if either of these duties was obeyed he would be perfectly safe, he had a perfect right to proceed along the well-traveled way upon the presumption that the law would be obeyed and that his life would not be endangered by a reckless disregard of these very necessary precautions.

This is no new doctrine for as far back as the *Stevens case*, CALHOUN, J., speaking for this court, said: "He had the right to suppose and did suppose that the south bound train was not traveling faster than the limit prescribed by law, in which case he was in no sort of danger." So here, Sumrall had the right to suppose and did suppose that the north bound train was not traveling faster than the law would allow, and he had a right a bell rung at least three hundred yards south of the Finch crossing, neither of which was done; and he also had the right to suppose and did suppose that no crew would pass through the City of Wesson at the rate of thirty or forty miles an hour over the constantly used crossing of that city without any sort of regard for human life, and it was this natural and legal supposition acted upon by him and ignored by the defendant company which cost him his life.

Argued orally by *R. N. Miller* and *Edward Moyes*, for appellant, and by *J. S. Sexton*, for appellee.

·WHITFIELD, C. J., delivered the opinion of the court.

The facts in this case which ·control, very briefly stated, are as follows: Luther Sumrall, for whose death this suit is brought, left the store of a man named Beecham, very soon before the killing, went east to the depot, and then went north along the common traveled way between the north and south bound tracks of the Illinois Central Railroad, a distance of about four hundred and forty yards from the depot crossing, and just as he turned to the right on Finch's crossing in the city of Wesson, and raised his foot to step onto the track, he was struck by the pilot beam of the engine and killed. The declaration was framed on the theory of ordinary negligence merely on the part of the railroad company, the charges were all given upon that theory alone, and the evidence was addressed to sustain that theory of simple ordinary negligence on the part of the appellant. There is not a hint in the declaration, nor in the charges on either side, about willful and wanton negligence on the part of the appellant company. The defense of the railroad company was contributory negligence on the part of the deceased in not exercising the senses of sight and hearing for his own protection. It would seem that he never once, during the four hundred and forty yards distance he walked north between the two tracks, turned to look south down the track, when simply to look was to live. It is certain that he did not look; for, if he had looked, he must necessarily have seen the train, and could have easily avoided the danger. It is certainly extraordinary that a normal man would walk between two railroad tracks a distance of four hundred and forty yards, and never once turn to look for an approaching train. Never once does he seem to have thought about a train, until he had raised his foot to go upon the railroad track at Finch's crossing, when, suddenly becoming apprised of his peril, he attempted to draw back, but too late.

The theory upon which the plaintiff below proceeded, as outlined in her charges in this case, was that the deceased had the

right to assume that the railroad company would not violate the law by running through this incorporated town at a rate of speed in excess of six miles an hour. Undoubtedly the plaintiff did have the right to indulge that assumption; but it does not at all follow from this right on his part so to assume, that he was, by virtue of his right to indulge such assumption, absolutely absolved from the exercise of the ordinary care required of the average man situated and circumstanced as he was. The deceased had no right, because he could assume that the railroad company would not thus violate the law as to excessive speed, to put his life at hazard on the notion, because of such an assumption, that he could discharge himself absolutely from the exercise of his faculties of sight and hearing, and proceed upon the theory that the company would be liable to him for injury, merely because of such assumption, notwithstanding he might himself fail to exercise in the slightest degree that ordinary care required of the average man, the exercise of which would have relieved him from any peril. The duty of the railroad company and the duty of the decedent as to the exercise of ordinary care by each, at the time and place of this killing, was a reciprocal duty, the exact limits of which have never been better stated than in the case of *Vicksburg, etc., R. Co. v. McGowan,* 62 Miss. 682. It certainly cannot be necessary to do more than to refer again to that case. It is a wholly fallacious line of reasoning which maintains that the railroad company absolutely insures and guarantees the safety of a normal person walking along its tracks, although he may violate all the rules of ordinary care which the situation imperatively demands he should exercise, merely because the railroad company has exceeded the rate of speed allowed by law. Certainly it was negligence in the railroad company to run through an incorporated town at more than six miles an hour; but just as certainly it was negligence of the most manifest kind for the deceased, situated and circumstanced as he was, to walk up a railroad track four hundred and forty

yards, without once looking behind to see if a train was approaching, and attempt to cross the track without once looking.

Here is a case of negligence both on the part of the railroad company and on the part of the deceased. The duties and the obligations of both the deceased and defendant were reciprocal each to the other. The failure of the railroad company to observe its duty did not absolve the deceased from the duty he was under to use, at the time and place and under the circumstances, the care his peril demanded. We think that the peremptory charge to find for the defendant on account of the contributory negligence of the deceased, contributing directly to his own death, on the facts in this record, should have been given. It cannot be said, in view of the course this case took in the court below, that the plaintiff can ask here for an affirmance on the idea that the testimony may show a case of willful and wanton negligence on the part of the defendant company. The case of *Yazoo, etc., R. Co. v. Schraagg,* 84 Miss. 125, 36 South. 193, settles that. The plaintiff chose her line of battle in the court below. She stood on the ordinary negligence of the railroad company. She never hinted at willfulness and wantonness on the part of defendant. All her instructions were along that line, and it is too late now to attempt to shift the ground on which a recovery is sought in this court for the first time. If, in view of the testimony set out in the record, the plaintiff had averred willful and wanton negligence on the part of the railroad company, and sought recovery along that line, a very different case would have been presented for our determination. We are limited, however, by the case as it was presented in the court below, and on that case, as shown by the record, a peremptory instruction should have been given for the railroad company.

*Reversed and remanded.*